UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————

NEGRITO PAUL NOEL,

        Plaintiff,

    v.                                                                24-CV-6603-CJS
                                                                              ORDER
TROOPER KEVIN D. LAIBACH, et al.,

        Defendants.

———————————————————————

NEGRITO PAUL NOEL and DONNA
JENKINS,

        Plaintiffs,                                              24-CV-6623-CJS
                                                                              ORDER
    v.

TROOPER P.D. STEADMAN, et al.,

        Defendants.

———————————————————————

The Court entered an Order under 28 U.S.C. § 1915(e)(2)(B)(i) dismissing the complaints in these two actions on the basis that they were baseless and frivolous. 24-CV-6603, ECF No. 8; 24-CV-6623, ECF No. 7.[1] The plaintiffs had alleged that traffic stops, on July 16, 2024 (24-CV-6603), of Negrito Paul Noel ("Noel"),[2] and on July 24, 2024 (24-CV-6623), of Noel and Donna Jenkins ("Jenkins"), were unlawful because Noel's vehicle was a "personal use vehicle, not for hire or used for commercial purposes,"

---

1 These two cases were consolidated only for purposes of screening the complaints under 28 U.S.C. §§ 1915(e)(2)(B).

2 Noel has filed several actions in this Court under various names; Negrito Paul Noel, Paul Noel, and Paul A.E. Noel. *See Negrito v. Warren*, 19-CV-6271-CJS ("Paul Noel formerly known as Paul A.E. Noel"); Noel V. Chisholm, 21-CV-6498-CJS ("Negrito Paul Noel also known as Paul Noel Negrito also known as Paul A.E. Noel").

and thus not subject to various provisions of the New York State Vehicle and Traffic Law ("VTL") related to insurance and registration requirements.  24-CV-6603, ECF Nos. 1, 8; 24-CV-6623, ECF Nos. 1, 7.  The Court found that the complaints were frivolous because the claims asserted in both complaints were based on the same baseless theories the Court previously had rejected several times—*viz.*, that Noel's vehicles are "personal use vehicles" and thus not subject to various sections of the VTL mandating registration and liability insurance.  24-CV-6603, ECF No. 8 at 1, 6-7; 24-CV-6623, ECF No. 7 at 1, 6-7 (both referring to several actions Noel had filed in the past based on the same legal theories).

The plaintiffs have filed motions for reconsideration on the basis that the Court overlooked several issues raised in their complaints, including, *inter alia*, that during the traffic stop at issue in 24-CV-6603, defendant New York State Trooper Laibach ("Laibach") applied "excessively tight handcuffs" to Noel, and another New York State Trooper at the scene of the traffic stop, "Trooper 2, only loosened one of the cuffs; Noel was not permitted to contact his attorney at the scene of the traffic stop or at the New York State Police barracks ("barracks"); Noel remained in tight handcuffs and was shackled to a bench at the barracks for several hours and later transferred to the Monroe County Jail ("MCJ") without bail; and New York State Trooper Steadman ("Steadman") conducted an unreasonable search and seizure at the time of the traffic stop.  *See* 24-CV-6603, ECF No. 10 at 5-6, 12-13; 24-CV-6623, ECF No. 9 at 5-6, 12-13.[3]  The motions also raise several other claims or issues re-alleging the same baseless theories that Court

---

[3] The motions filed in both actions are identical.

rejected previously,  24-CV-6603, ECF No. 10; 24-CV-6623, ECF No. 9, or ones not raised in the complaints, *id.*, ECF No. 10 at 5; 24-CV-6623, ECF No. 9 at 5.

To the extent the Court overlooked Noel's claims in 24-CV-6603 that (1) Laibach and Trooper 2 applied handcuffs too tightly, (2) Noel could not contact his attorney, (3) Noel was transported to the barracks following his arrest and shackled to a bench for six hours and later was transported to MCJ from the barracks without justification and without bail,  and (4) Noel was excessively detained without arraignment in violation of N.Y. Crim. Proc. L., § 140.20, the motion for reconsideration, 24-CV-6603, ECF No. 10, is granted and the Court screens those claims below.  *See* 28 U.S.C. § 1915(e)(2)(B).  To the extent that Noel and Jenkins alleged an unlawful search and seizure during the traffic stop on July 24, 2024, 24-CV-6623, ECF No. 1 at 2, 5; ECF No. 9 at 6, the motion for reconsideration is granted and the Court screens that claim below.  However, to the extent that all other issues raised in the motions relate to, and reargue, Noel's same baseless theories under the VTL or raise claims not raised in the complaints, the motions are denied.  *See, e.g., Noel v. Clauston*, 21-CV-6559 (CJS), 2022 WL 22945380, at *4 (W.D.N.Y. June 28, 2022) (dismissing as meritless Noel's claims in a previous action "predicated on the legal theory that he was not subject to either the traffic laws or the traffic stop").

## I.    RECONSIDERATION

Because the motions for reconsideration were filed (June 17, 2025) within 28 days of the date the judgments dismissing the complaints were filed (May 21, 2025), they are construed as motions under Federal Rule of Civil Procedure 59(e), which authorizes a

party to file a motion to alter or amend judgment no later than 28 days after the entry of

judgment.

> It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'Rather, the standard for granting a Rule 59 motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.

*Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as*

*amended* (July 13, 2012) (citation modified).   The Court recognizes that it overlooked

certain claims Noel and Jenkins had pleaded in the complaints that were not based solely

on the baseless theories Noel had advanced several times in the past that the Court had

rejected.  *Cf. City of New York v. Milhelm Attea & Bros., Inc. et al.*, 591 F. Supp. 2d 234,

236 (E.D.N.Y. 2008) (finding that a motion for reconsideration is not "'an occasion for

repeating old arguments previously rejected'") (quoting *Associated Press v. United States*

*Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005)).  Those claims, liberally construed,

are: (1) a Fourth Amendment excessive force claim and state law assault and battery

claim against Laibach and Trooper 2 based on tight handcuffs, 24-CV-6603, ECF No. 1

at 4-6 (Claim Two, Ten, and Eleven); (2) a denial of counsel claim when he was not

allowed to call his counsel during his six hour detention against Laibach, Sergeant Nanry

("Nanry"), six unnamed New York State Troopers ("Six Unnamed Troopers"), and

Lieutenant Reed ("Reed"), , *id.* at 3, 6 (Claim Fourteen);[4] (3) a failure to intervene and

false imprisonment claim against Nanry, Six Unnamed Troopers, and Reed when Noel

---

[4] While Noel alleges in his motion for reconsideration that Trooper 2 knocked the phone out of his hands at the scene of the traffic stop, 24-CV-6603, ECF No. 10 at 5,6, this nowhere is alleged in the complaint, *id.*, ECF No. 1.

was shackled at the barracks for over six hours after being transported there from the scene of the traffic stop and later transferred to MCJ without justification or without bail, *id.* at 3, 5-6 (Claim Three, Six, and Twelve); (4) a delayed arraignment claim, *id.* at 2 (Claim Twelve), and (6) an unreasonable search and seizure claim against Steadman, 24-CV-6623, ECF No. 1 at 2, 5 (Claim One).  Thus, to the extent the Court did not address these claims in the orders now under reconsideration, the motions are granted but the motions are denied in all other respects.

## II.    SCREENING

Noel was granted permission to proceed *in forma pauperis* and therefore the Court proceeded to screen the complaints.  Because the Court overlooked the claims set forth above, the Court proceeds to screen those claims now.  Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  Section 1915(e)(2)(B) requires *sua sponte* dismissal of claims that are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(i)–(iii).  Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (quoting *Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir.1999) (per curiam)).  But leave to amend pleadings may be denied when any amendment would be futile.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

In evaluating a complaint, the court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases.").  Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure.  *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

## II.    NOEL'S CLAIMS (24-CV-6603)

### A.    Tight handcuffs

#### 1.    Fourth Amendment: Excessive Force

Following the traffic stop on July 16, 2024, Noel alleges that Laibach issued 10 tickets and applied handcuffs to Noel.  24-CV-6603, ECF No. 1 at 5-6.  Noel alleges that the handcuffs were "unnecessarily tight and painful," *id.* at 6, and unnecessary because the traffic stop was unlawful under the VTL.  ECF No. 1 at 5, 10.  Trooper 2 later loosened the right cuff, but despite Noel's complaints that the cuffs were too tight, "refused to properly adjust the left one, leaving deep marks on [Noel's] wrists."  *Id.* at 6.  Noel was then transported to the barracks "enduring further discomfort during the ride."  *Id.*  During

his entire time at the barracks, he complained that the handcuffs were too tight and Emergency Medical Services ("EMS") had to be called.  *Id.*  He suffered "bruising to the wrist."  *Id.*  Noel alleges this was a violation of the Fourth Amendment.  *Id.* at 5 (Claim Two).

The Supreme Court has held that where a claim for excessive force "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment."  *Graham v. Connor,* 490 U.S. 386, 394 (1989).  An arrestee's excessive force claim "is therefore analyzed under the Fourth Amendment's 'reasonableness' standard, rather than under the subjective 'substantive due process' approach."  *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (quoting *Graham*, 490 U.S. at 396-97).

In  *Cugini*,  the Second Circuit applied the Fourth Amendment's reasonable standard to a claim by a person arrested and detained but not yet arraigned.  941 F.3d at 612.  The plaintiff alleged that the arresting officer used excessive force when handcuffing her, thereby causing serious injury to her wrist.  *Id.*  The court first addressed the three-factor evidentiary test set in *Esmont v. City of New York*, 371 F. Supp. 3d 202, 215 (E.D.N.Y. 2005), which had been employed by other district courts in the Circuit "to determine whether a plaintiff had sufficient alleged a claim of excessive force in the process of handcuffing."  *Cugini*, 941 F.3d at 612-13.  The three evidentiary factors are: that "(1) the [arrestee's] handcuffs were unreasonably tight; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the [arrestee's] wrists."  *Id.* at 612 (alterations in original) (quoting *Esmont*, 371 F. Supp. 3d at 215).  While acknowledging that these evidentiary factors "may, indeed prove useful to

a district court in assessing the soundness of a handcuffing-based excessive force claim,"

the Second Circuit stated that

> [t]he "test of reasonableness under the Fourth Amendment," . . . "is not
> capable of precise definition or mechanical application [and that] [a] court's
> reasonableness analysis is not limited to a factual checklist; it must instead
> be guided by a "careful balanc[e]" between the "nature and quality of the
> intrusion" and the "countervailing government interests at stake" under the
> circumstances.

*Cugini*, 941 F.3d at 613 (quoting *Graham*, 490 U.S. at 396); *cf. Horace v. Gibbs*, 802 F.

App'x 11 (2d Cir. Feb. 7 2020) (summary order) (reversing district court's grant of

summary judgment to defendants on plaintiff's handcuffing-based excessive force claim

because district court "treat[ed] one factor—the absence of serious injury—as dispositive,

without considering other factors such as the reasonableness of tight handcuffs under the

circumstances, and whether the defendants ignored the plaintiff's complaints."). The

*Cugini* court continued that a plaintiff

> need not always establish that she alerted an officer to the fact that her
> handcuffs were too tight or causing pain. The question is more broadly
> whether an officer reasonably should have known during handcuffing that
> his use of force was excessive. A plaintiff satisfies this requirement if either
> the unreasonableness of the force used was apparent under the
> circumstances, or the plaintiff signaled her distress, verbally or otherwise,
> such that a reasonable officer would have been aware of her pain, or both.

*Id.* (citing cases).

The Second Circuit thus concluded that "where an officer's use of force in

handcuffing is plainly unreasonable under the circumstances *or* where a plaintiff

manifests clear signs of her distress—verbally or otherwise—a fact finder may decide that

the officer reasonably should have known that his use of force was excessive for purposes

of establishing a Fourth Amendment violation." *Cugini,* 941 F.3d at 613.

At this stage of the litigation, *see* 28 U.S.C. § 1915(e)(2)(B) (screening complaint), and mindful of the requirement to liberally construe *pro se* pleadings, the Court finds that Noel's Fourth Amendment handcuffing-based excessive force claim may proceed to service against Laibach and the unidentified Trooper who was at the scene of the traffic stop (Trooper 2).[5] Noel alleges that the handcuffs were "unnecessarily tight and painful," ECF No. 1 at 6, and that despite his pleas that the handcuffs were too tight, Trooper 2 loosened only the right handcuff, but "refused to properly adjust the left one, leaving deep marks on [Noel's] wrists." *Id.* at 4, 6. The cuffing continued while he was transported to the barracks, and while he was shackled to a bench for six hours. *Id.* Noel alleges that EMS had to be called because the handcuffs were too tight. *Id.* at 6. Based on these allegations—assumed true for purposes of this review—Noel plausibly has alleged that Laibach and Trooper 2 "reasonably should have known during handcuffing that [their] use of force was excessive." *Cugini*, 941 F.3d at 613; *cf. Noel v. Clauston*, 2022 WL 22945380, at *4 (dismissing with leave to amend a prior Noel excessive force claim because Noel's "generalized allegations of 'pain' in his shoulders and wrist while in handcuffs, and 'ongoing' issues' with his shoulders,' [were] not sufficient to demonstrate a cognizable injury." Noel also failed to "provide any details regarding the other evidentiary factors recognized by the Second Circuit such as the specific circumstances in which the handcuffs were used, whether he informed the officers . . . that the handcuffs

---

[5] Permitting this or any claim to proceed to service does not immunize it from a dismissal or summary judgment motion. *See Jones v. Sullivan*, No. 9:19-CV-0025(BKS)(CFH), 2020 WL 5792989, at *5 (N.D.N.Y. Sept. 29, 2020) ("A court's initial screening under § 1915(e) and/or § 1915A does not preclude a later dismissal under Fed. R. Civ. P. 12(b)(6).").

were too tight, or whether the officers otherwise 'should have known' the handcuffs were too tight.").[6]

      2.   <u>Assault and Battery</u>

Noel also alleges that the tight handcuffing rose to the level of a state common law tort claim of assault and battery.[7]  24-CV-6603, ECF No. 1 at 5 (Claim Ten).  "'[E]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of [excessive force and state law assault and battery claims are] substantially identical.'"  *Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (summary order) (alteration in original) (quoting *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991)); *see also Harvey v. Corneal*, 24-CV-7380 (JAV), 2025 WL 2345879, at *5 (S.D.N.Y. Aug. 13, 2025) ("Courts interpreting New York state law of assault and battery as it applies to police officers have stated that the essential elements of § 1983 excessive force and state law assault and battery claims are substantially identical" (citation modified)).  "A plaintiff pleading assault and battery based on tight handcuffing must show 'that the officer was made reasonably aware that the force used was excessive.'" *Harvey*, 2025 WL 2345879, at *5 (quoting *Cugini*, 941 F.3d at 608).  Based on the Fourth Amendment discussion above, the Court finds that the state law assault and battery claim may proceed against Laibach and Trooper 2, as well.

---

[6] For purposes of this screening and thus assuming Noel's allegations are true, the Court finds that Noel's allegations here regarding his handcuffing-based excessive force claim are substantively different than those in *Noel v. Clouston*, 2022 WL 229453880.

[7] *See* 28 U.S.C. § 1367(a) ("Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.")

**B.    Denial of Counsel**

Noel alleges that he was prevented from calling his attorney at the scene of the traffic stop and again during his detention at the barracks.  ECF No. 1 at 3, 6 (Claim Fourteen).  The Court construes this allegation as a violation of Noel's Sixth Amendment right to counsel.  "[I]t has been firmly established that a person's Sixth . . . Amendment . . . right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him."  *Kirby v. Illinois*, 406 U.S. 682, 688 (1972); *see also Texas v. Cobb*, 532 U.S. 162, 167-68 (2001) (reaffirming that a criminal defendant's right to counsel arises only once prosecution is commenced "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment" (citation modified)).  "However, when the underlying charges against a plaintiff are state law charges—as in this case—the Court will look to state law to determine when the adversarial judicial proceedings were initiated."  *Garnes v. City of New York*, 22-cv-01769 (ER), 2025 WL 605466, at *10 (S.D.N.Y. Feb. 25, 2025) (citing *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 349 (2d Cir. 1998)).  "New York has held that a criminal proceeding, and with it the right to counsel, is initiated by the filing of an accusatory instrument."  *Deshawn*, 156 F.3d at 349 (citing *People v. Blake*, 35 N.Y.2d 331, 338, 361 N.Y.S.2d 881, 890, 320 N.E.2d 625, 631 (1974)).

Here, the Court acknowledges there are no specific allegations regarding when Laibach filed the accusatory instrument charging Noel with obstruction of governmental administration and resisting arrest, or, in other words, whether a prosecution was commenced during the time he was detained at the barracks.[8]  *See People v. Letterio*,

---

[8] In the motions for reconsideration Noel asserts that after he questioned the traffic stop, Laibach fabricated evidence of an obstruction of governmental administration charge" and "fabricated" a resisting arrest

16 N.Y.2d 307, 32, 266 N.Y.S.2d 368, 213 N.E.2d 670 (1965) (holding that Sixth Amendment right to counsel does not attach to a petty offense, like a traffic infraction); *see also Jackson v. Dillon,* 518 F. Supp. 618, 621 (E.D.N.Y.1981) ("Since the events at the station house took place while plaintiff was in custody but well before judicial proceedings had been initiated, plaintiff's Sixth Amendment right to counsel is not implicated in this case."). However, liberally construing this claim, as it must, the Court finds that based on the allegations that Laibach filed charges against Noel for offenses other than the traffic violations—resisting arrest and obstruction of governmental administration—Noel's right to counsel may have attached at some point during the six hours he was detained at the barracks and not permitted to contact counsel. *LoPizzo v. LeFevre*, 863 F. Supp. 96, 100 n.2 (E.D.N.Y. 1994) ("In New York, the filing of the accusatory instrument . . . commences a state criminal action." (citing N.Y. Crim. Proc. L. § 100.05).

---

charge.  ECF No. 10 at 5.  He claims both charges were dismissed and that the district attorney "showed no interest to prosecute the charge."  *Id.*  Whether construed as a malicious prosecution claim or a fabrication of evidence claim, these claims were not raised in the complaint and Noel cannot raise them for the first time on a motion for reconsideration.  *See, e.g., Kotze v. NBC Universal Media, LLC*, 25-CV-04703 (JAV); 2025 WL 2806755, at *2 (S.D.N.Y. Oct. 1, 2025 ("Th[e] Court is reluctant to permit Plaintiffs to assert new causes of action in motions for reconsideration.); *Wood v. Mutual Redevelopment Houses, Inc.*, 14 Civ. 07535 (AT) (DCF), 2017 WL 11589600, at *10 (S.D.N.Y. Mar. 1, 2017) ("New legal theories and causes of action are generally inappropriate in motions for reconsideration." (citing *Analytical Surveys, Inc.*, 684 F.3d at 52 (restating that a motion for reconsideration is not a "vehicle for . . . presenting the case under new theories").

Noel alleged in the complaint only that he also was charged with resisting arrest and obstruction of governmental administration.  ECF No. 1 at 4.  He did not assert a malicious prosecution or fabrication of evidence claim and the Court will not consider these new claims on this motion.  His claim was based solely on his assertion that the traffic stop itself was unlawful and any tickets or charges following the stop were unlawful.  Moreover, there are no factually supported allegations that Laibach fabricated evidence or commenced criminal proceedings against Noel with malice and without probable cause.

Accordingly, this claim may proceed to service against Laibach, Hanry, Six Unnamed Troopers, and Reed.[9]  *Cf. Noel v. Warren*, 19-CV-6271-CJS, 2019 WL 13422447, at 3 (W.D.N.Y. May 3, 2019) (dismissing a previous right to counsel claim made by Noel because the right to counsel had not attached when Noel was pulled out of vehicle at traffic stop).

### C.    Detention at the Barracks

Noel alleges that he was shackled to a bench at the barracks for over six hours after being transported there from the scene of the traffic stop and later transferred to MCJ without justification or without bail, 24-CV-6603, ECF No. 1 at 3, 5-6 (Claim Three, Six, and Twelve); *see id.*, ECF No. 10 at 5.  While at the barracks, he claims that Sergeant Nanry, Reed, and Six Unnamed Troopers failed to intervene, and EMS had to be called to address his condition caused by the tight handcuffs.  *Id.*, ECF No.  at 5, 6.  Reed arrived at the barracks and decided that Noel would not be granted bail and would be transferred to MCJ, "despite no valid charges had been brought against [him], nor had [he] been served with any accusatory instrument so there was no personal jurisdiction."  *Id.* The exact nature of the claims asserted is not at all clear to the Court but construing them liberally, these allegations are construed as a failure to intervene claim and a false imprisonment claim against Nanry, Six Unnamed Troopers, and Reed.

### 1.    Failure to intervene: excessive force

This claim appears to be based on the tight handcuffs applied initially by Laibach at the scene of the traffic stop, which apparently remained on Noel's wrist throughout the six hours at the barracks where he was cuffed to a leather belt and shackled to a bench

---

[9] The Court presumes for purposes of screening only that Laibach was at the barracks when Noel requested counsel.

by his foot.  He alleges EMS had to be called.  *Id*. at 5, 6.  The tight handcuffing claim is proceeding against Laibach and Trooper 2, but Noel claims here that law enforcement officers at the barracks, including Nanry, Reed and Six Unnamed Troopers failed to intervene when they ignored his continual complaints about the tightness of the handcuffs.  *Id*. at 5 (Claims Three and Twelve)

"A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016); *see also Riccuiti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) ("A police officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." (citation modified)).   "Liability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill v. Krzeminski,* 839 F.2d 9, 11–12 (2d Cir.1988)).

Noel's allegations are not at all clear regarding who was at the barracks and witnessed the tight handcuffs, who heard his complaints, and what the complaints actually concerned. He alleges that Nanry, Reed, and the Six Unnamed Troopers "observed [him] shackled by the ankle like a slave for over 6 hours, based on illegal traffic infractions and invalid misdemeanors, and did nothing to prevent it."  24-CV-6603, ECF No. 1 at 5, 6; *see also id.*, ECF No. 10 at 6 (alleging in the motion for reconsideration that "Plaintiff was

transported to the [barracks], where [he] was shackled to a bench . . . for approximately six hours[;]" he spoke to Reed, and "[despite ongoing physical pain in his wrists, shoulders, and back, [his] requests for medical attention were initially ignored [and] EMS was eventually called due to [his] condition").

While the allegations are hazy, a court should not dismiss a claim *sua sponte* unless "the complaint lacks an arguable basis in law or fact. Where a colorable claim is made out, dismissal is improper prior to service of process and the defendants' answer." *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (per curiam) (citation modified). Here, Noel alleges that he was transported to the barracks while cuffed, he was cuffed to a leather belt and shackled by his ankle to a bench for six hours, complaining continually about the pain and discomfort, and EMS had to be called because of the pain and discomfort. 24-CV-66-3, ECF No. 1 at 5, 6. Based on these allegations, it appears that Nanry, Reed, and the Six Unnamed Troopers were at the barracks with Noel and were aware of the tight handcuffs but did not take any steps to ameliorate the alleged excessive force. Thus, at this stage in the litigation, the failure to intervene claim related to Noel's claim of excessive force against Nanry, Reed and the Six Unnamed Troopers, in and when identified, may proceed to service.

### 2.    False imprisonment

As with the failure to intervene claim, the true nature of this claim, too, is unclear. Noel alleges that he was detained at the barracks for six hours and at some point "after a brief conversation [with several troopers at the barracks], Reed decided that [Noel] would not be granted bail and would be transferred to [MCJ], despite the fact that no valid charges had been brought against [him], nor had [he] been served with any accusatory

instruments so there was no personal jurisdiction."  24-CV-6603, ECF No. 1 at 6.  He asserts that Nanry, Reed, and the Six Unnamed Troopers falsely imprisoned him when they did nothing to prevent his six-hour detention at the barracks "without bail or release under [New York Criminal Procedure Law §] 140.20(4)."  *Id.* at 5 (Claim Twelve).

The Court construes this claim as one of false imprisonment because Noel alleges that he was detained for six hours based on his oft-rejected claims that the traffic stop infractions were unlawful because New York's VTL insurance and registration requirements did not apply to him or his vehicle and that the three other misdemeanor charges stemming from the traffic stop were invalid.  *Id.*[10]

"Under New York law, the elements of a false imprisonment claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'"  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (alteration in original) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456, 373 N.Y.S. 2d 87, 93, 335 N.E.2d 310 (1975)); *see also Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992) ("The elements of a false arrest claim under § 1983 are substantially the same as elements of a false claim under New York law." (citation modified)); *Dickerson v. Monroe Cnty. Sheriff's Dep't*, 114 F. Supp. 2d 187, 191 (W.D.N.Y. 2000) ("Claims for false arrest and false imprisonment are essentially the same causes of action." (citing *Weyant v. Okst*,101 F.3d 845, 853 (2d Cir.1996))).  "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under §

---

[10] As noted above, any claims related to the validity of the stops based on Noel's claims he is not subject to various sections of New York's VTL are baseless and will not be reconsidered.

1983." *Weyant*, 101 F.3d at 852 (citation modified).  Police officers have probable cause

to arrest when they possess "knowledge of, or reasonably trustworthy information as to,

facts and circumstances that are sufficient to warrant a person of reasonable caution in

the belief that an offense has been or is being committed by the person to be arrested."

*Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (citing *Dunaway v. New York*, 442

U.S. 200, 208 n.9 (1979)).

Noel's false imprisonment claim is based entirely on his oft rejected and baseless

claims that he is not subject to various provisions of New York's VTL because his vehicle

was a "personal use vehicle, not for hire or used for commercial purposes."  *See* 24-CV-

6603, ECF No. 8 at 1, 6-7.  Noel thus cannot establish that the traffic stop and later

detention was not supported by probable cause.  Nor has Noel alleged plausibly that his

obstruction or resisting arrest charges following the stop were not based on probable

cause.  He alleges only that the obstruction or resisting arrest charges were "invalid"

because there was no basis for the traffic stop.  ECF No. 1 at 4, 6.   Thus, Noel's false

imprisonment claim is dismissed without leave to amend.  *Cuoco*, 222 F.3d at 112 (finding

that repleading would be futile).

### D.    Delayed Arraignment

Noel alleges that he was "imprisoned for over six hours without bail[11] or release

under [N.Y. Crim. Proc. L. §] 140.20(4)."  24-CV-6603, ECF No.  at 5; ECF No. 10 at 13,

¶ III.E.  To the extent Noel alleges that he was not timely arraigned or released under

CPL § 140.20(1) or (4), this claim must be dismissed because § 140.20 does not create

a private right of action.  *See Tortora v. City of New York*, 804 F. App'x 35, 38 (2d Cir.

---

[11] The Court already has addressed any claim of false imprisonment Noel may be asserting.  *See supra* at
Section II.C.2 at 15-16.

2020) (summary order).  Construed as a claim of excessive pre-arraignment detention, it too must be dismissed because the alleged delay was not excessive.  *See id.* at 37 ("When a warrantless arrest is made, a judicial determination of probable cause must be made promptly or with 48 hours." (citation modified)).  Noel alleges that he was detained at the barracks only for six hours without bail or release.  He thus fails to state a claim of excessive detention, and the Court finds that leave to amend would be futile.

### E.    Unlawful Search and Seizure

Noel and Jenkins's complaint often alludes to a search and seizure in violation of the Fourth Amendment on July 24, 2024.   24-CV-6623, ECF No. 1 at 2, 4, 5. However, the search and seizure allegations all relate to the traffic stop which they claim was invalid because Noel was driving a personal use vehicle and thus not subject to various provisions on the VTL.  *Id.* at 5 ("Trooper P.D. Steadman . . . personally deprived the Plaintiffs of their liberty . . . when he initiated a traffic stop based on alleged violations of vehicle and traffic laws related to insurance suspension and registration of a motor vehicle. . . .  It was unreasonable for Steadman to conduct the search and seizure under these circumstances.  A reasonable officer, trained in vehicle and traffic law, would have recognized from the registration that Noel's vehicle was not a commercial vehicle and that insurance was optional for this type of vehicle. . . .  Therefore, Steadman's actions constituted an unlawful search and seizure . . . .")

There are no allegations whatsoever that any search of the vehicle or of Plaintiffs' persons occurred in connection with the traffic stop on July 24, 2024.  Any claims of an unreasonable search and seizure therefore are subsumed within the claim that the traffic stop itself was invalid; a claim that the Court repeatedly has rejected as baseless.  24-

CV-6623, ECF No. 7 at 5-7.  Thus, any claim of an unlawful search and seizure on July 24, 2024, fails to state a claim upon which relief can be granted and leave to amend is denied as futile.

      **F.**    **Supervisory Liability**

Noel's complaint in 24-CV-6603 asserts that Nanry, Reed, and Superintendent James failed to supervise or train Laibach and the Six Unnamed Troopers in VTL § 125, which he claims excludes his vehicle from the definition of a motor vehicle.  24-CV-6603, ECF No. 1 at 5.  The complaint in 24-CV-6623 alleges that James failed to supervise or train Steadman in relation to VTL § 125.  24-CV-6623, ECF No. 1 at 5.  These claims must be dismissed.  First, any claims that these defendants failed to supervise their subordinates relating to the traffic stop and detention at issue must be dismissed because there are no claims of vicarious or supervisory liability under section 1983, *see Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003.  A defendant can be liable only under § 1983 only if he or she violated the plaintiff's rights "through the official's own individual actions." *Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020).  Second, the claims against the supervisory officials are premised solely on the baseless claim that Noel should not have been stopped for a violation VTL § 125.

Accordingly, any claims against Nanry, Reed, and James alleging that they failed to supervise or train their subordinates is dismissed without leave to amend because the Court finds that amendment would be futile.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs' motions for reconsideration are granted in part and denied in part.  Noel's claims in the complaint, 24-CV-6603, ECF No. 1,

alleging excessive force and assault and battery may proceed to service against Laibach and Trooper 2; his claim alleging failure to intervene at the barracks against Nanry, Reed, and Six Unnamed Troopers may proceed to service; and his claim alleging denial of right to counsel against Laibach, Nanry, Reed, and Six Unnamed Troopers may proceed to service. All other claims that the Court has reconsidered herein—false imprisonment, delayed arraignment, unreasonable search and seizure, and supervisory liability—remain dismissed without leave to amend. Thus, the only claims proceeding to service are Noel's Fourth Amendment excessive force and state law assault and battery claims against Laibach and Trooper 2, his denial of counsel claim while Noel was detained for six hours at that barracks against Laibach, Nanry, Reed, and Six Unnamed Troopers, and his failure to intervene claim at the barracks against Nanry, Reed, and Six Unnamed Troopers.

## **ORDER**

IT IS HEREBY ORDERED that Plaintiffs' motions for reconsideration, 24-CV-6603, ECF No. 10, and 24-CV-6623-CJS, ECF No. 9, are granted in part and denied in part; and it is further

ORDERED that the Clerk of Court shall reopen 24-CV-6603; and it is further

ORDERED that the Clerk of Court shall amend the caption of 24-CV-6603 and add as a defendant "John Doe Trooper 2, an Unnamed New York State Police Officer;" and it is further

ORDERED that Noel's claims in 24-CV-6603 alleging (1) excessive force and assault and battery against Laibach and Trooper 2, once identified (Claims Two and Ten), (2) failure to intervene at the barracks against Nanry, Reed, and Six Unnamed Troopers,

once identified (Claims Three and Twelve), and (3) denial of right to counsel at the barracks (Claim Fourteen) against Laibach, Nanry, Reed, and Six Unnamed Troopers, once identified, may proceed to service; and it is further

ORDERED that all other claims pleaded in the complaints in 24-CV-6603, ECF No. 1, and 24-CV-6623, ECF No. 1, dismissed previously, 24-CV-6603, ECF No. 8, and 24-CV-6623, ECF No. 7, remain dismissed; and it is further

ORDERED that the Clerk of Court is directed to cause the United States Marshals Service to serve the summons and complaint in 24-CV-6603, ECF No. 1, this Order, and the Order entered May 20, 2025, *id.*, ECF No. 8, on defendants Keith Laibach, Sergeant Nanry, Lieutenant Reed and Six Unnamed Troopers and John Doe Trooper 2, once identified, without Noel's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Noel's favor; and it is further

ORDERED that that pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (1997) (per curiam) the New York State Attorney General's Office is requested to (1) ascertain the identities and last known service address of Six Unnamed Troopers who were present at the New York State Police Barracks at 1155 Scottsville Rd, Rochester, New York on July 16, 2024, and John Doe Trooper 2 who was present at the scene of the traffic stop at 115 South Avenue, Rochester, New York on July 16, 2024; and (2) ascertain the full name, with correct spelling, and last known service address of Keith Laibach, Sergeant Hanry, and Lieutenant Reed,   within 30 days of the date of this Order.  The Attorney General's Office need not undertake to defend or indemnify these individuals at this time.  Rather, this Order merely provides a means by which Noel may name and properly serve these defendants, as instructed by the Second Circuit in *Valentin*.

The Attorney General's Office shall produce the information specified above by mail (*Pro Se* Litigation Unit, United States District Court, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York 14202) within 30 days of the date of this Order.  Upon receipt of this information, the Clerk of the Court shall amend the caption of this action to reflect the full names of these defendants.  Should the *Valentin* response return personally identifiable information such as a home address, that contact information shall be given to the Marshals Service solely for the purpose of effecting service; this information will otherwise remain confidential; and it is further

ORDERED that the Clerk of the Court shall forward a copy of this Order, the Order entered May 20, 2025, 24-CV-6603, ECF No. 8, and the complaint in 24-CV-6603, ECF No. 1, by email to Ted O'Brien, Assistant Attorney General in Charge, Rochester Regional Office, at Ted.O'Brien@ag.ny.gov

SO ORDERED.

Dated:        October 27, 2025
              Rochester, New York

CHARLES J. SIRAGUSA
UNITED STATES DISTRICT JUDGE